UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

KEITH GREENE,                          )
                                       )
                     Petitioner,       )        Case No. 1:08-cv-351
                                       )
v.                                     )        Honorable Janet T. Neff
                                       )
THOMAS K. BELL,                        )
                                       )        **REPORT AND RECOMMENDATION**
                     Respondent.       )
_____)

   This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

Petitioner is serving a term of 108-to-300 months' imprisonment for armed robbery. MICH. COMP.

LAWS § 750.529. The Kalamazoo County Circuit Court imposed sentence on May 16, 2005, after

a jury found petitioner guilty of armed robbery and assaulting, resisting, or obstructing a police

officer. The conviction and sentence were affirmed on direct appeal by the Michigan Court of

Appeals, but the state Supreme Court remanded for resentencing. After resentencing, petitioner filed

this action on April 16, 2008. He thereafter asked the court to stay the matter and hold it in

abeyance, so that he could present unexhausted claims to the Michigan courts. The court granted

a stay, and petitioner filed a motion for post-judgment relief in the Michigan courts. After

unsuccessful pursuit of his unexhausted claims in the Michigan legal system, petitioner filed an

amended petition, to which respondent has now filed an answer.

   The petition, as amended, asserts the following claims:

I. Was the Defendant unlawfully deprived of the effective assistance of trial counsel when trial counsel failed to raise and preserve an insanity or temporary insanity defense and an alibi defense?

II. Did the trial court deprive the Defendant of his due process and equal protection rights when it overruled the defense objections and scored 20 points on OV-1 and 10 points on OV-9?

III. Did the trial court violate the United States and Michigan constitutions in sentencing the Defendant to a prison term of 126 months to 25 years on the armed-robbery conviction?

IV. Did the prosecution fail to present sufficient evidence to prove beyond a reasonable doubt that Appellant committed the crime of armed robbery?

V. Was Appellant denied his right to due process where he was subjected to an unnecessarily suggestive identification procedure where the eyewitness testified that she identified him because, "he was the only light-skinned one there." In the alternative, was trial counsel ineffective in failing to move to have the line-up suppressed?

VI. Petitioner was denied his basic fundamental right to due process as guaranteed under US Const Ams V, VI, XIV; Mich Const 1963, art 1, secs 17, 20, when Petitioner was denied counsel at the critical pre-trial and sentencing stages of his criminal proceedings.

VII. Petitioner was denied his fundamental due process rights as guaranteed under US Const Ams V, VI, XIV; Mich Const 1963, art 1, secs 17, 20, when appellate counsel denied Petitioner his right of appeal.

(Respondent's Answer at 3, docket # 31). The first five claims were presented to the state appellate courts on direct review; the last two were presented by petitioner in post-judgment proceedings.

District Judge Janet T. Neff has referred this matter to me for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts. Upon review of the record, I conclude that all claims presented in petitioner's original and amended petition are meritless. I therefore recommend that the petition be denied.

## Proposed Findings of Fact

### A.    Trial Court Proceedings

The state-court prosecution arose from an armed robbery in Kalamazoo County that occurred on October 30, 2004.  The Michigan Court of Appeals summarized the underlying facts as follows:

> On October 30, 2004, the victim was working as an adult entertainer for a group of males in an apartment.  As she danced, the men gave her tips ranging from $1 to $20.  At one point, defendant entered the apartment with two other males.  This small group looked around for a few minutes and then left after the victim indicated she did not know where the weed was.  Defendant later confronted the victim in the parking lot as she was entering a car that had three other individuals in it.  Defendant pointed what appeared to be a handgun at the victim's side and repeatedly demanded the money the victim had just earned.  When the victim did not immediately comply, defendant got into the car, rummaged through the victim's purse, and reached under the victim's leg where she had hidden some of her earnings.  At one point, defendant's gun discharged, and it sounded like a cap pistol.  Defendant ran, and the police were called.  When police arrived, they encountered defendant near the scene.  A police officer repeatedly ordered defendant to stop, but defendant continued to run.  Eventually, the police captured defendant and retrieved $30, consisting of one ten-dollar bill, and 20 one-dollar bills.  They did not recover a gun or the other $270 the victim estimated had been stolen.  At trial, defendant explained that he ran from the police because he "had warrants out on him and did not want to go to jail."

*People v. Greene*, No. 263126, 2006 WL 3378467, at * 1 (Mich. Ct. App. Nov. 21, 2006).

Jury trial in the Kalamazoo County Circuit Court commenced on April 5, 2005, and consumed three days.  (*See* Trial Transcripts, docket #s 35, 36, 37).  At the outset of trial, defense counsel requested an adjournment.  (TT I, 3).  Counsel informed the court that petitioner just told him that he met a man in jail (whose name petitioner did not know) who claimed to have witnessed petitioner's arrest in the Burger King parking lot on the evening of the robbery.  "The individual saw Mr. Greene arrested there and indicated that just prior to Mr. Greene being arrested there were two other individuals -- young black males -- that appeared to this individual who were somewhat light-

skinned . . . ." (*Id.*, 4). Counsel also said that petitioner now claimed that "three cousins and a girlfriend" could testify that just before his arrest petitioner had left the cousins' residence to go to Burger King (the place where he was arrested). Counsel provided the court with the names of these witnesses. (*Id.*). Counsel asked for an adjournment for the purposes of pursuing this testimony.

The prosecutor objected on the ground that petitioner had five months between arrest and trial in which he should have developed this information. (*Id.*, 5-7). The court declined an adjournment, finding that the three cousins and girlfriends "have been readily available to the defendant since the beginning" and that he had no excuse for not coming forward within the time limits set by the court for identification of witnesses. (TT I, 8). Furthermore, the court would be occupied for most of the day in picking a jury for another case, so defense counsel would still be able to pursue these witnesses within the time available. (*Id.*, 9). As to the unnamed jailhouse witness, the court found that the proffered testimony was "not really material to the issues in the case." On this basis, the court declined an adjournment. (*Id.*, 9-10).

After *voir dire* and opening statements, the prosecution called Rachel Howard, the 18-year-old victim of the alleged assault. (TT I, 203). Ms. Howard testified concerning the events that took place in an apartment in Kalamazoo, Michigan, on October 30, 2004, where she had been hired to perform adult entertainment for 30-to-40 white males. (*Id.*, 204-07). As she performed, she collected cash tips from the audience. During her performance, three suspicious-looking black men walked into the apartment, wearing black hoodies. (*Id.*, 208). She described the lighting in the apartment as "very bright." She was therefore able to see and distinguish the faces of each individual, even though they did not pull their hoodies back. (*Id.*, 209). One of them was wearing a "do-rag." (*Id.*, 211).

The three men "searched around" for awhile, and then one of them asked if Howard knew "where the weed was at." She said, "no." After seven or eight minutes, the men left. (TT I, 210).

After her work was done, Ms. Howard put the tip money in her shawl and began to leave. (TT I, 212). She estimated that there was between $300 and $350. (*Id.*, 213). She left for the parking lot, where three people were waiting for her in a car. (*Id.*, 214). As she exited the building, she saw in the parking lot three black males, and she recognized them as the same people she had seen inside. (*Id.*, 216). As she walked toward the car, she was confronted by the men. One of them began to make passes, but she asked to be just left alone. (*Id.*, 217). The men followed her toward the car, but she was able to get into the back seat. (*Id.*, 220). As she opened the door and tried to get into the car, one of the men (whom she had noticed was wearing a "do rag" in the apartment) leaned into the car and blocked her from shutting the door. He asked whether he could use a cell phone, in a tone that the witness described as "real violent" and angry. (*Id.*, 225-27). The man pulled a black gun out of the front pocket of his hoodie, pointed it at Howard's side and demanded "all your money," threatening to kill her. (*Id.*, 228-30). She gave him some money. (*Id.*, 230). He demanded more money and said he would kill her if she did not give him all of her money. He then searched her and found more money under her leg. (*Id.*, 232). Petitioner held the gun, pointed at Howard, in one hand, while he used the other to feel around for more money. (*Id.*, 233). Petitioner ultimately pulled the gun away from Howard, and it fired, sounding like a cap gun. (*Id.*, 233-34). Howard assumed that petitioner had a toy gun and grabbed his sweatshirt to detain him while the others called the police. (*Id.*, 234-36). Petitioner pulled away and ran across the parking lot, escaping. (*Id.*, 236-37).

On December 9, 2004, police had petitioner participate in a corporeal lineup at the county jail. (TT II, 255-58). Howard picked petitioner out of the lineup as her assailant. "I pretty much knew off the bat who it was." (*Id.*, 256). She testified that she was "ninety percent" sure. (*Id.*, 257-58).

The prosecution called Eric Lee Levin, who was one of the people waiting in the car outside the apartment. (TT II, 277-78). Levin observed an "African-American, light-skinned with higher cheekbones" following Howard as she approached the car. (*Id.*, 284-85). Levin was sitting in the back seat of the car when the assailant entered, pointing his gun at Levin and telling him "not to do anything stupid." (*Id.*, 290-91). Levin was about two feet away from the assailant at the time. (*Id.*, 287). Levin later identified petitioner from a photo array as the person who robbed Howard. (*Id.*, 300-02). He also made an in-court identification. (*Id.*, 287-88).

The prosecutor called Kennedy Crawford, a police officer employed by the City of Kalamazoo. (TT II, 313). Crawford testified that police dispatch provided a description of a suspect in an armed robbery and that police began a search in the area. (*Id.*, 314-15). Officer Crawford saw a man climb over a six-foot high chain link fence and walk towards a Burger King parking lot. (*Id.*, 316-17). The person matched the description given by dispatch and was in the approximate area, so Crawford yelled for the person to stop. Instead, the suspect looked at him and started running. (*Id.*, 317). Because the dispatcher had said a weapon had been involved, Crawford drew his gun and ordered the man to stop. The man did stop and was arrested without further incident. Crawford identified petitioner as the man that he arrested. (*Id.*, 318).

After his arrest, petitioner was taken to the county jail and read his rights. Petitioner told Officer Crawford that he had not robbed anyone and that he had not been at the apartment that

night.  (TT II, 320-21).  Police found one ten-dollar bill and twenty one-dollar bills in petitioner's pocket.  (*Id.*, 323).  No gun was recovered.

Petitioner testified in his own defense (TT II, 357).  He denied all involvement with the robbery.  (*Id.*, 359).  He explained his flight from Officer Crawford by saying that he was scared and that he had probation violation warrants pending and did not want to go to jail.  On cross-examination, he conceded that he was wearing a do-rag and a jacket of the type described by the victim on the night of the arrest.  (*Id.*, 362-63).  Defense rested without calling any other witnesses.  After hearing final arguments, the jury found petitioner guilty of armed robbery and of resisting or obstructing a police officer.  (TT III, 443).

Petitioner and counsel appeared before Judge William Schma on May 16, 2005, for sentencing.  The court resolved objections to scoring under the advisory state sentencing guidelines.  (*See* Sentencing Transcript (ST), docket # 13).  The prosecutor requested a sentence at the low end of the guidelines, because "nobody was actually shot."  (ST, 10).  Defense counsel stated that petitioner continued to protest his innocence and asked for a sentence at the low end of the guidelines.  Petitioner's allocution pointed out that no weapon was found and that he was only out that night to get something to eat.  (*Id.*, 11).  In pronouncing sentence, the court emphasized petitioner's serious juvenile and adult criminal record, involving crimes of violence.  (*Id.*, 11-12).  The court remarked that the identifications of the eyewitnesses in this case "were as solid as any case I've ever heard -- strong as a rock."  (*Id.*, 12).  The court accepted the recommendations to sentence at the low end of the guidelines.  Petitioner was sentenced as a second habitual offender to a term of 126 months to 25 years on the armed robbery conviction.  He received a sentence of 198 days on the resisting arrest conviction, with credit for 198 days served.  (*Id.*, 13).

**B.    Appellate Proceedings**

Petitioner appealed as of right to the Michigan Court of Appeals. The appellate brief submitted by counsel raised the following claims:

I.    THE DEFENDANT WAS UNLAWFULLY DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, WHEN TRIAL COUNSEL FAILED TO RAISE AND PRESERVE AN INSANITY OR TEMPORARY INSANITY DEFENSE AND AN ALIBI DEFENSE.

II.    THE TRIAL COURT DEPRIVED THE DEFENDANT OF HIS DUE PROCESS AND EQUAL PROTECTION RIGHTS WHEN IT OVERRULED THE DEFENSE OBJECTIONS TO AND SCORED 20 POINTS ON OV-1 AND 10 POINTS ON OV-9.

III.    THE TRIAL COURT VIOLATED THE UNITED STATES AND MICHIGAN CONSTITUTIONS IN SENTENCING THE DEFENDANT TO A PRISON TERM OF 126 MONTHS TO 25 YEARS ON THE ARMED ROBBERY CONVICTION.

(Brief of Defendant-Appellant, found in Court of Appeals record, docket # 15). Petitioner filed a *pro se* brief raising two further claims:

I.    DID THE PROSECUTION FAIL TO PRODUCE SUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT COMMITTED THE CRIME OF ARMED ROBBERY?

II.    WAS APPELLANT DENIED HIS RIGHT TO DUE PROCESS WHERE HE WAS SUBJECTED TO AN UNNECESSARILY SUGGESTIVE IDENTIFICATION PROCEDURE WHERE THE EYEWITNESS TESTIFIED THAT SHE IDENTIFIED HIM BECAUSE, "HE WAS THE ONLY LIGHT-SKINNED ONE THERE." IN THE ALTERNATE WAS TRIAL COUNSEL INEFFECTIVE IN FAILING TO MOVE TO HAVE THE LINE-UP SUPPRESSED?

(Standard 4 Brief, found in Court of Appeals record, docket # 15).

On November 21, 2006, a panel of the Michigan Court of Appeals issued a *per curiam*, unpublished opinion affirming petitioner's conviction and sentence. *People v. Greene*, No.

263126, 2006 WL 3378467 (Mich. Ct. App. Nov. 21, 2006). With regard to the claims of ineffective assistance of counsel arising from failure to investigate and present an insanity defense or an alibi defense, the court found no factual basis to support a showing of prejudice. The court noted the lack of any affidavit or other medical evidence indicating that petitioner suffered from a psychological condition at the time of the offenses such that exploration of an insanity defense might have been reasonable. "Because there is no basis for concluding that an insanity defense was a substantial defense and no basis for concluding that defendant tried to assert it, defendant cannot establish a claim of ineffective assistance of counsel." (*Id.* at * 1). The court found a similar dearth of factual support for the claim based on a pretermitted alibi defense. The court noted that petitioner "has not provided any witness affidavits or identified any evidence in the record establishing that the proposed witnesses' testimony would have yielded valuable evidence that would have affected the outcome of the trial." (*Id.* at * 2).

With regard to sentencing error, the court found that petitioner's challenge to guideline calculations was waived by defense counsel's on-the-record expression of satisfaction with the guideline scoring. The court rejected a Sixth Amendment challenge to judicial fact-finding in connection with sentencing, brought pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004), on the basis that *Blakely* does not apply to Michigan's indeterminate sentencing scheme. Finally, the court rejected a challenge to the sentence as disproportionate under state sentencing law or as cruel and unusual under federal precedents, noting that the sentence was at the lowest end of the sentencing guideline range. (*Id.* at * 2). Turning to petitioner's *pro se* claims, the court rejected a challenge to the sufficiency of the evidence, finding that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The court focused on the eyewitness testimony

of both Howard and Levin and their unequivocal identification of petitioner, both in pretrial proceedings and at trial. (*Id.*). The court rejected a due-process challenge to the pretrial lineup procedure, finding no evidence of undue suggestiveness. The court also rejected the claim that counsel was ineffective for failing to move to suppress the identification. (*Id.* at * 3).

Petitioner sought leave to appeal to the Michigan Supreme Court. In a published order, the state Supreme Court vacated petitioner's sentence on the basis of guideline scoring error and remanded the case for resentencing under properly scored guidelines. *People v. Greene*, 730 N.W.2d 478 (Mich. 2007). The court denied leave to appeal on all other issues.

Petitioner appeared before Judge Gary Giguere, Judge Schma's successor, for resentencing on June 25, 2007. (*See* Resentencing Transcript (RT), docket # 39). Petitioner was represented by new counsel. The court announced that the recalculated guideline range was 108-to-225 months for the minimum sentence. (RT, 4). Defense counsel stated that he and defendant were in full agreement with the guidelines scoring. (*Id.*). Defense counsel asked for a sentence at the bottom of the guideline range, or 108 months. (*Id.*, 8). Petitioner addressed the court, stating that he had learned a lot since he had been locked up and that he still maintained his innocence. He stated that he learned his lesson. (*Id.*, 8-9). Judge Giguere sentenced defendant in accordance with his counsel's recommendation to a period of 108 months to 25 years, with credit for time served. (*Id.*, 14).

Petitioner filed this habeas corpus action on April 16, 2008. In response to the original petition, respondent moved to dismiss, citing petitioner's failure to exhaust his last two claims in the Michigan Court of Appeals. In response to an order to show cause why the case should not be dismissed without prejudice, petitioner filed a motion to stay proceedings. On February 5,

2009, Judge Janet Neff entered an order staying proceedings, so that petitioner could exhaust all claims in the state courts. (Order, docket # 23).

Petitioner returned to the state circuit court with three unexhausted claims: (1) petitioner was denied counsel at the critical pretrial and sentencing stages of his criminal proceedings; (2) petitioner was denied his right to appeal by appellate counsel; (3) appellate counsel's ineffective assistance establishes good cause for petitioner's failure to raise these issues on direct appeal. In a one-page order entered February 24, 2009, Judge Giguere denied the motion, finding that petitioner's claims were meritless. (2/24/09 Order Denying Defendants' Motion for Relief from Judgment, found in Michigan Court of Appeals record, docket # 43). A panel of the Michigan Court of Appeals denied petitioner's delayed application for leave to appeal, for failure to "meet the burden of establishing entitlement to relief under MCR 6.508(D)." (6/5/09 Order in case no. 291282, docket # 43). By standard order entered January 29, 2010, the Michigan Supreme Court denied leave to appeal, on the same basis. (docket # 44).

Petitioner returned to this court in a timely fashion, moving to amend his petition to add the three claims rejected by the state courts in post-judgment proceedings. (Motion, docket # 28). By order entered February 23, 2010 (docket # 30), the court reopened the case, deeming the petition amended to include all exhausted claims. Respondent then filed an answer to the amended petition, to which petitioner filed a reply. The matter is now ready for decision.

**Standard of Review**

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"),

the provisions of that law govern the scope of the court's review.  *See Penry v. Johnson*, 532 U.S. 782, 791 (2001).  AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (*per curiam*); *Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (*per curiam*); *Renrico v. Lett*, 130 S. Ct. 1855, 1862 (2010).  "AEDPA requires heightened respect for state court factual and legal determinations."  *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006).  If a state court adjudicated the claim, deferential AEDPA standards must be applied.  28 U.S.C. § 2254(d); *see Premo v. Moore*, 131 S. Ct. 733, 739 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).

AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law.  *Bell v. Cone*, 535 U.S. at 693-94.  It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012)(*per curiam*).  The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Harrington*, 131 S. Ct. at 786.  Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state

court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;[1] or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Berghuis v. Thompkins*, 130 S. Ct. 2250, 2259 (2010).

## Discussion

### I.    Conviction For Resisting Arrest

Habeas corpus is available only on the ground that a person is "in custody" in violation of the federal Constitution or laws. 28 U.S.C. §§ 2241(c), 2254(a). The Supreme Court has made it clear that the "in-custody" requirement is a prerequisite for subject-matter jurisdiction. *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989). For the reasons set forth below, I conclude that petitioner was not in custody on his conviction for assaulting, resisting or opposing a police officer at the time he filed his petition on April 16, 2008.

Petitioner appeared for initial sentencing on May 16, 2005. (*See* ST, docket # 38). The court imposed a sentence of 198 days on the resisting arrest conviction, with credit for 198 days served. This sentence was therefore fully served at the time it was pronounced. The armed robbery sentence was ordered to run concurrently.[2]

---

[1] Under this standard, a lower court must ground its decision on the "holdings" as opposed to the "dicta," of Supreme Court decisions as of the time of the relevant state-court decision. *Howes v. Fields*, 132 S. Ct. 1181, 1187 (2012). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court[.]' 28 U.S.C. § 2254(d)(1). It therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 132 S. Ct. at 2155.

[2] The court subsequently resentenced petitioner on the armed robbery conviction. The sentence on the resisting arrest conviction was left undisturbed.

A habeas petitioner must satisfy the custody requirement at the time the habeas action is filed. *Spencer v. Kemma*, 523 U.S. 1, 7 (1998). A petitioner is not in custody for purposes of a section 2254 proceeding if his sentence is fully expired at the time the petition is filed. *Maleng*, 490 U.S. at 490-92; *accord Gavin v. Wells*, 914 F.2d 97, 98 (6th Cir. 1990) (court lacks jurisdiction over a direct attack on a conviction that was fully served prior to the filing of the petition). When a petitioner is serving *consecutive* sentences, the petitioner remains in custody under any one of them until all sentences have been served. *See Garlotte v. Fordice*, 515 U.S. 39, 41 (1998); *Peyton v. Rowe*, 391 U.S. 54, 67 (1968). Petitioner in the present case, however, was serving *concurrent*, not consecutive, sentences.

The Supreme Court has never held that a prisoner may bring a habeas corpus case to challenge a completely expired concurrent sentence. The law is to the contrary. In *Mays v. Dinwiddie*, 580 F.3d 1136 (10th Cir. 2009), the habeas petitioner was in custody on the longer of two concurrent sentences. He attempted to challenge a burglary sentence that, like the resisting arrest sentence in the present case, had expired at the time the habeas petition was filed. The Tenth Circuit affirmed dismissal of the challenge to the burglary conviction, on the ground that the petitioner was no longer "in custody" on that sentence and that the habeas court therefore lacked subject-matter jurisdiction under section 2254(a). The court found that *Peyton* and *Garlotte*, which apply expressly to consecutive sentences, were not controlling, but that the Supreme Court's decision in *Maleng* required dismissal. In so holding, the Tenth Circuit relied on a number of unpublished decisions, including one from the Sixth Circuit Court of Appeals, that stand for the proposition that "a habeas petitioner may *not* challenge an expired sentence that was imposed concurrently with the sentences

that he or she continues to serve." 580 F.3d at 1140 n.1 (citing *Clark v. Russell*, No. 92-3097, 1992 WL 259355, at * 1 (6th Cir. Oct. 5, 1992)).

On the authority of *Maleng*, *Clark*, and *Mays*, I conclude that this court lacks subject-matter jurisdiction to entertain a habeas corpus challenge to petitioner's conviction for resisting arrest, as his sentence had terminated long before he filed his habeas corpus petition.

## II.     Conviction For Armed Robbery

### A.     Ineffective Assistance of Trial Counsel

In his first claim for relief, petitioner asserts that he was deprived of the effective assistance of trial counsel when counsel failed to raise and preserve an insanity defense or an alibi defense. This claim was raised and rejected on direct appeal. Claims of ineffective assistance of counsel are measured under the standards established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced defendant resulting in an unreliable or fundamentally unfair outcome. 466 U.S. at 687-88. In adjudicating the first prong of the standard, the court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.

The court should recognize that counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. The Sixth Amendment is violated only if counsel's acts or omissions "were outside the wide range of professionally competent assistance." *Id.* Strategic choices after

thorough investigation of law and facts relevant to plausible options are "virtually unchallengeable." *Id*. As for prejudice, the court focuses on whether "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). "[T]he defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Because the Michigan Court of Appeals decided that petitioner's claims of ineffective assistance of counsel on their merits, its decision must be afforded deference under AEDPA. *See Harrington v. Richter*, 131 S. Ct. at 784; *Bourne v. Curtin*, 666 F.3d 411, 414 (6th Cir. 2012). To receive habeas relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, petitioner must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586-87 (6th Cir. 2012). This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Bourne*, 666 F.3d at 414. "[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 556 U.S. at 123; *see Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*).

The Michigan Court of Appeals rejected both claims of attorney error for lack of proof that petitioner was prejudiced. With regard to the failure to raise an insanity defense, the court noted a lack of affidavits or qualified medical evidence indicating that petitioner "had any medical or psychological condition at the time of the offenses to support that exploration of insanity might have been reasonable." *People v. Green*, 2006 WL 3378467, at * 1. The court found that references in the presentence investigation report to "mental health issues" and "substance abuse problems" did not establish a basis for a diagnosis of criminal insanity. In fact, the Department of Corrections psychological report concluded that there was no behavioral evidence of major mood disorder or formal disorder of thought. On this basis, the psychologist found that petitioner was not in need of further mental health treatment. The appellate court found that there was no evidence that would have required competent counsel to pursue an insanity defense. *Id.*

The decision of the Michigan Court of Appeals easily passes scrutiny under the deferential AEDPA standard. The court applied the appropriate standard under *Strickland* and reasonably applied that standard to the facts of the case. Petitioner presented no evidence to the state Court of Appeals that he was suffering from a disease or mental defect such that he was prejudiced by counsel's failure to present an insanity defense. Because the state Court of Appeals decided this matter on its merits, the habeas corpus court is restricted to the record presented to the state Court of Appeals. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1400-01 (2011). This is true even where, as here, a petitioner has sought an evidentiary hearing unsuccessfully in the state appellate system. *See Ballinger v. Prelesnik*, No. 12-1357, __ F.3d __, 2013 WL 776790, at * 3-4 (6th Cir. Mar. 4, 2013).

The Supreme Court has emphasized that the duty to investigate is not absolute, and that the scope and extent of a defense lawyer's investigation depends on the circumstances of the

case. *Id.* at 1406-07. When faced with the bare allegation that counsel failed to investigate a meritorious claim of insanity, the state Court of Appeals acted reasonably in concluding that the claim was factually unsupported. There was no evidence before the appellate court to support a finding that defense counsel was objectively unreasonable for failing to pursue an insanity defense, or that the outcome of this case might have been different had counsel done so. The decision of the Court of Appeals was objectively reasonable.

Petitioner's second claim of ineffective assistance of counsel relates to the alleged failure to pursue an alibi defense. This argument arises from the colloquy that took place at the beginning of trial, during which defense counsel asked the court for an adjournment so that he could investigate the testimony of new witnesses that petitioner had just brought to counsel's attention. The first witness was an unnamed inmate at the county jail, who purportedly claimed to have witnessed petitioner's arrest in the Burger King parking lot. The witness allegedly said that two other men who looked something like petitioner had recently been in the same parking lot. The second group of witnesses mentioned by counsel were petitioner's girlfriend and cousins, who allegedly would testify that just before his arrest petitioner had left the cousins' residence to go to Burger King. (TT I, 3-4). Petitioner faults counsel for not pursuing this allegedly exculpatory evidence.

On direct appeal, the Michigan Court of Appeals rejected this claim, again for lack of corroborating evidence. The court noted that petitioner "has not provided any witness affidavits or identified any evidence in the record establishing that the proposed witnesses' testimony would have yielded valuable evidence that would have affected the outcome of the trial." *Greene*, 2006 WL 3378467, at * 2. The appellate court also faulted petitioner for failing to inform his trial counsel of

-18-

this allegedly important evidence until the morning of trial. *Id.* This claim of ineffective assistance

of counsel also withstands scrutiny under the deferential AEDPA standard. To be entitled to relief

under *Strickland*, petitioner was required to establish prejudice, that is, "a reasonable probability that,

bur for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694. The state appellate court was correct in rejecting any claim of prejudice,

for lack of proof.

      In an effort to provide some evidence of prejudice, petitioner presents the brief

affidavit of Corcelia Barnett, dated January 28, 2009. (docket # 28-6 at ID# 237). This affidavit was

presented to the circuit court in support of petitioner's motion for post-judgment relief, but obviously

was not presented to the Michigan Court of Appeals on direct review, as that court issued its decision

on petitioner's claim of ineffective assistance of counsel in the year 2006, three years earlier. The

affidavit asserts that at 10:15 p.m. on October 30, 2004, petitioner left a residence where the affiant

was visiting her mother. Petitioner, the affiant's cousin, stated that "he and his female companion

were leaving to go to Burger King to get something to eat." The affidavit asserts that the affiant does

not think that enough time elapsed between petitioner's leaving the residence and the armed robbery.

It also asserts that petitioner never owned or had access to a gun. This affidavit, which is suspect

because it contains handwritten changes, is insufficient to raise any plausible claim of prejudice,

because it is not properly before the court. The Supreme Court has squarely held that where a state

court has decided a constitutional issue on its merits, habeas review is limited to the record that was

before the state court. *See Cullen v. Pinholster*, 131 S. Ct. at 1398. "We now hold the review under

§ 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the

merits." *Id.* Attempts to gain habeas corpus relief on the basis of evidence not presented to the state

-19-

court at the time of its adjudication are improper under *Cullen*.[3]  Evidence presented in federal court

has "no bearing" on section 2254(d)(1) review.  *Ballinger*, 2013 WL 776790, at * 4 (quoting *Atkins*

*v. Clarke*, 642 F.3d 47, 49 (1st Cir. 2011)).

        The Michigan Court of Appeals reasonably applied the *Strickland* standard to the

facts before it in rejecting plaintiff's claims of ineffective assistance of trial counsel on direct appeal.

The decision of the state appellate court therefore withstands scrutiny under the standard of review

required by AEDPA.

        B.      <u>Sentencing Error</u>

        Petitioner's next claim is that the trial court abridged his constitutional rights by

making errors in scoring the state sentencing guidelines.  This claim was raised on direct appeal.  In

lieu of granting leave to appeal, the Michigan Supreme Court vacated the judgment and ordered

resentencing under properly scored guidelines.  *See People v. Greene*, 730 N.W.2d 478 (Mich.

2007).  Petitioner's second claim is therefore moot, as the state Supreme Court has already granted

him complete relief on this claim.

--------

    [3] Furthermore, as the Attorney General points out, there is no basis on the present record to conclude that defense counsel acted unreasonably.  During the colloquy before trial, the court did not preclude defense counsel from interviewing or calling the "new" witnesses.  In fact, the court suggested that the witnesses "can make themselves available to Mr. Turpel for -- for his consideration within the time frame still available before the defense would be at the point in trial where it might choose to providing [sic] witnesses.  So it's -- these people are not unavailable." (TT I, 9).  The record shows that one of the witnesses, Markea Williams, was present in the court, and defense counsel indicated that she might be testifying.  Defense counsel obviously had contact with these witnesses.  The court must indulge a strong presumption that counsel rendered adequate assistance.  *Cullen*, 131 S. Ct. at 1403.  Petitioner has the burden to overcome this presumption by showing that counsel failed to act reasonably in the circumstances.  *Id.*  On this record, the most reasonable presumption is that defense counsel contacted the witnesses and determined not to call them in the exercise of his professional judgment.

C.     Constitutional Challenge To The Length of Sentence

Petitioner asserts a due-process violation arising from the trial court's alleged failure to articulate sufficient facts to show that the sentence was proportionate to the crime. This issue arises solely under state law. The principal of proportionality was enunciated by the Michigan Supreme Court in *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990). Habeas corpus relief is not available for errors of state law. *See* 28 U.S.C. § 2254(a). There is no federal proportionality principle implicated by the sentence in this case. In *Harmelin v. Michigan*, 501 U.S. 957 (1991), a plurality of the Court concluded that the Eighth Amendment does not contain a requirement of strict proportionality between the crime and the sentence, but only forbids extreme sentences that are grossly disproportionate to the crime. 501 U.S. at 1001. The Sixth Circuit holds that federal courts will not engage in proportionality analysis except where the sentence imposed is death or life imprisonment without parole. *See United States v. Thomas*, 49 F.3d 253, 260-61 (6th Cir. 1995); *accord Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (challenge to proportionality of Michigan sentence arises solely under state law and is not cognizable under habeas review).

Petitioner's appellate briefs in the state system also raised a Sixth Amendment claim, arguing that the trial court's fact-finding in connection with sentencing violated the principles established by the Supreme Court in *Blakely v. Washington*, 542 U.S. 296 (2004). Subsequent decisions of the Sixth Circuit Court of Appeals render this contention inarguable. That court has repeatedly held that Michigan's indeterminate sentencing system does not run afoul of the principles established in *Blakely* and its predecessors. *See Montes v. Trombley*, 599 F.3d 490, 496-98 (6th Cir. 2010); *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009); *accord Haskell v. Berghuis*, No.

10-1432, 2013 WL 163965, at * 13 (6th Cir. Jan. 16, 2013); *Deatrick v. Sherry*, 451 F. App'x 562, 564-65 (6th Cir. 2011).

Petitioner's purported constitutional challenges to his sentence are insubstantial.

### D.    Sufficiency of the Evidence

Petitioner's next claim is that the prosecution failed to present sufficient evidence to support the jury's verdict on his conviction for armed robbery.  A section 2254 challenge to the sufficiency of evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*; *see Cavazos v. Smith*, 132 S. Ct. 2, 3-4 (2011) (*per curiam*) (*Jackson v. Virginia* "makes clear that it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial.").  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins,* 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n. 16; *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011).

The Michigan Court of Appeals ruled directly on this claim on direct appeal.  Review of this issue must be conducted under the AEDPA standard, which the Sixth Circuit has described

as "very deferential." *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007). Review of challenges to the sufficiency of evidence under the *Jackson v. Virginia* standard proceeds under the "unreasonable application" prong of AEDPA. *See Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008). Such an argument is properly understood as an allegation that the state court's decision resulted in an unreasonable application of *Jackson v. Virginia*. *See Eady v. Morgan*, 515 F.3d 587, 601-02 (6th Cir. 2008). Review in such cases "is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor." *Thompson v. Bock*, 215 F. App'x 431, 436 (6th Cir. 2007). This standard presents a "nearly insurmountable hurdle" for the habeas petitioner. *Davis v. Lafler*, 658 F.3d at 534. "Adding to this extremely high bar are the stringent and limiting standards of AEDPA." *Id.*

The Sixth Circuit has summarized the "double layer of deference" given the state-court decisions in the context of sufficiency-of-the-evidence claims:

Thus, after AEDPA, federal courts reviewing state habeas claims accord a double layer of deference:

> First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not re-weigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.

*White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009) (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)).

In the present case, petitioner raised the issue on direct appeal in a *pro se* brief. In reviewing the issue, the Michigan Court of Appeals articulated the appropriate standard under *Jackson v. Virginia*, citing state cases adopting this standard. 2006 WL 3378467, at * 2. The only challenge petitioner raised in the state Court of Appeals was to the sufficiency of the evidence to identify him as the perpetrator of the armed robbery. The appellate court cited and summarized the testimony of two eyewitnesses -- the victim and a passenger in the car -- who identified petitioner both in court and in pretrial proceedings. The court emphasized the definite nature of the identification testimony, concluding that the evidence, viewed "in a light most favorable to the prosecution, could lead a rational trier of fact to reasonably conclude, beyond a reasonable doubt, that petitioner was the robber." *Id.*

The decision of the state Court of Appeals easily withstands scrutiny under the deferential AEDPA standard. Armed robbery under Michigan law is a statutory offense. *See* MICH. COMP. LAWS § 750.529. The state courts construe this statute to define the elements of armed robbery as "(1) an assault, (2) a felonious taking of property from the victim's person or presence, and (3) the defendant must be armed with a weapon described in the statute." *People v. Johnson*, 520 N.W.2d 672, 673 (Mich. Ct. App. 1994). The statute makes it clear that the weapon used in the robbery need not necessarily be real, as long as it was "used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon." MICH. COMP. LAWS § 750.529. Thus, the possibility that the gun used in the robbery was a cap gun is not fatal to a

prosecution for armed robbery.[4]  Additionally, under Michigan law, identification of the defendant as the perpetrator is an essential element of all criminal offenses.  *See People v. Oliphant*, 250 N.W.2d 443, 449 (Mich. 1976).

As noted, the only contest on appeal was whether petitioner was indeed the perpetrator; the testimony of both Rachel Howard and Eric Lee Levin established an armed robbery beyond any doubt.  The state Court of Appeals properly relied on the unequivocal eyewitness testimony of both Howard and Levin concerning identification of petitioner as the perpetrator.  On habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor the jury observed at trial.  *See Marshall v. Longberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and to resolve any ambiguities in their testimony.  *See Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). Therefore, assessment of witness credibility is beyond the scope of federal habeas review on the issue of the sufficiency of the evidence.  *See Moreland v. Bradshaw*, 699 F.3d 908, 918 (6th Cir. 2012); *Pinchon v. Myers*, 615 F.3d 631, 643-44 (6th Cir. 2010).  As did the state Court of Appeals, this court must defer to the jury's determination of credibility.  As both eyewitnesses had ample opportunity and motive to observe the identity of the perpetrator, the decision whether to believe them or not was for the jury.  Certainly, the testimony of two eyewitnesses in the circumstances of this case is more than sufficient to support the jury's verdict.

Petitioner's challenge to the sufficiency of the evidence does not withstand scrutiny on habeas corpus review.

---

[4] The jury was properly instructed on this issue by the trial court.  (TT III, 429-31).

E.    Due-Process Violation Arising From Suggestive
      Pretrial Identification; Ineffective Assistance of Counsel

Petitioner's next claim is that his due-process rights were abridged by an unnecessarily suggestive identification procedure employed in connection with a corporeal pretrial lineup, at which the victim identified petitioner as her assailant. The evidence shows that on December 9, 2004, police had petitioner participate in a corporeal lineup at the county jail. (TT II, 255-58). The victim, Rachel Howard, identified petitioner as her assailant. "I pretty much knew off the bat who it was." (*Id.*, 256). This testimony was introduced at trial without objection.

In petitioner's *pro se* appellate brief, he raised for the first time a due-process claim arising from the allegedly suggestive circumstances of the lineup. Petitioner's challenge arose from the following testimony:

Q    Now how did you recognize the person in that lineup?

A    It really wasn't a question. He was the only light-skinned one there. And his facial expressions-and especially when he came up to the window, it was even more clear with his facial expressions that he had.

Q    All right. So you recognized his face?

A    Yes.

Q    They're all wearing the same orange jumpsuit in the photograph-

A    Yeah.

Q    -and that's the way it was at the lineup as well-

A    Yes.

Q    -is that correct? Okay.
     How sure at that time were you that this was the person who had robbed you?

A        I was pretty sure.

Q        Well, how sure is pretty sure?  Hundred percent, 90 percent?

A        I wouldn't say 100 percent; I'd say like maybe 90 percent-

(TT II, 257-58).  Petitioner seized on the victim's statement that petitioner "was the only light-skinned one there," as his sole evidence that the lineup was suggestive.

The state Court of Appeals ignored the lack of objection at trial and proceeded to review this due-process clause on its merits, finding as follows:

> Defendant also claims that he was denied his right to due process because the pretrial lineup procedure was unduly suggestive.  Defendant argues that the other lineup participants had a darker complexion, so he was the only individual fitting the description that the victim provided to police.  "An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process." *People v. Williams*, 244 Mich.App. 533, 542; 624 NW2d 575 (2001).  However, "to sustain a due process challenge, a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *People v. Kurylczyk*, 443 Mich. 289, 302; 505 NW2d 528 (1993).  In this case, the only evidence of suggestion was that defendant was the only "light-skinned" African-American in the lineup, which matched the victim's original description.  However, the victim also indicated to police that defendant was "not real light-skinned," so without more, we are not persuaded that defendant's complexion invalidated the lineup.  *See People v. Gunter*, 76 Mich.App 483, 490; 257 NW2d 133 (1977).  Police are not required to exert extraordinary effort to arrange a lineup of participants whose physical characteristics exactly match those of the defendant.  *See People v. Davis*, 146 Mich.App 537, 547; 381 NW2d 759 (1985).  Even if it were possible to present a lineup in which the participants looked identical, the purpose of the lineup would be thwarted and misidentification would be almost unavoidable.  Likewise, a lineup in which the defendant represents the median of all physical features is likely as suspect as one in which some of the defendant's features set him apart.  "Physical differences between defendant and the other lineup participants goes to the weight of the identification and not its admissibility." *People v. Sawyer*, 222 Mich.App 1, 3; 564 NW2d 62 (1997).  Defendant fails to persuade us that the lineup fostered irreparable misidentification.  *Kurylczyk, supra.*

*People v. Greene*, 2006 WL 3378467, at * 3.

Because the state Court of Appeals ruled directly on this claim, its decision is subject to deference under AEDPA. Habeas relief can be granted only if the state-court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law enunciated by the Supreme Court. 28 U.S.C. § 2254(d)(1). A state court's legal decision is contrary to clearly established federal law if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or decides a case differently from the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 413 (2000). Petitioner cannot meet this high standard. The state Court of Appeals enunciated the appropriate constitutional test, citing state cases that embody the federal constitutional standard. Under federal law, a conviction based on identification testimony following a pre-trial identification violates due process only when the pre-trial identification procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1986). If a criminal defendant is successful in showing that a pretrial identification was unduly suggestive, then the court must determine whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible. *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977). In the present case, the state Court of Appeals found that the pre-trial identification procedure was not unduly suggestive. The appellate court correctly noted that the only evidence of suggestion was the victim's testimony that petitioner was the only "light-skinned" African-American in the lineup, which matched the victim's original description. The appellate court was correct to discount this sliver of testimony as insufficient to establish that the identification procedure was so suggestive that it led to a substantial likelihood of misidentification. When read in the context of all of the victim's testimony concerning her degree of certainty about

the identification, it is clear that the shade of petitioner's skin did not contribute significantly to the identification. The witness placed much more emphasis on petitioner's facial expressions. (TT II, 257). The decision of the state Court of Appeals is not contrary to, or an unreasonable application, clearly established Supreme Court precedent.

In a related claim, petitioner asserts that his trial counsel was ineffective for failure to seek suppression of the pretrial identification. The state Court of Appeals rejected this claim on its merits, because the lineup was not impermissibly suggestive. 2006 WL 3378467, at * 3. This determination, again, is subject to deference under AEDPA, which allows habeas relief only if this determination represents an unreasonable application of governing Supreme Court authority. The state Court of Appeals was correct in concluding that counsel cannot be deemed ineffective for failing to make a futile or meritless motion. *See United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000).

F.    Denial of Counsel at Trial and on Appeal

Petitioner's last two claims were raised for the first time in his motion for post-judgment relief under Mich. Ct. R. 6.500. Petitioner asserts that his attorneys' assistance both at trial and on appeal was so deficient that it was equivalent to a constructive denial of counsel altogether. Relying on Supreme Court cases such as *United States v. Cronic*, 466 U.S. 648 (1984), petitioner asserts that prejudice must be presumed in the circumstances of this case. Respondent argues that these claims should be denied on the basis of procedural default, arising from petitioner's failure to raise these claims on direct appeal. Although the doctrine of procedural default does apply in this case, the Supreme Court and the Sixth Circuit have made it clear that a district court may dispense

-29-

with the complicated analysis applicable to procedural defaults and proceed directly to the merits of apparently defaulted claims, when to do so would be more expeditious. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Arias v. Hudson*, 589 F.3d 315, 316 (6th Cir. 2009). Because plaintiff's final two claims are patently meritless, this is an appropriate occasion for application of the *Lambrix* rule.

As a general matter, a criminal defendant claiming ineffective assistance of counsel must show prejudice, that is, that counsel's allegedly deficient performance resulted in an unreliable or fundamentally unfair outcome in the proceeding. *See Strickland*, 466 U.S. at 687, 694. In applying the prejudice prong, however, the Supreme Court has identified narrow categories of cases in which prejudice is presumed: (1) when there has been an actual or constructive denial of the assistance of counsel altogether, *see Mickens v. Taylor*, 535 U.S. 162, 166 (2002); (2) when counsel is burdened by an actual conflict of interest, *see Cronic*, 466 U.S. at 659; or (3) where there are "various kinds of state interference with counsel's assistance," *see Smith v. Robbins*, 528 U.S. 259, 287 (2000). In these situations, prejudice is so likely to occur that a case-by-case inquiry is unnecessary. *Strickland*, 466 U.S. at 692. Petitioner attempts to rely on this line of cases, asserting that the performance of his attorneys at trial and on appeal was so woefully deficient that petitioner was essentially denied counsel altogether and that prejudice must be presumed. This assertion is frivolous.

As found above, petitioner has not established even a colorable claim of ineffective assistance of counsel, let alone that his attorneys were so deficient that he should be deemed to have been without counsel at all. The Sixth Circuit holds that the *Cronic* exception applies "only where the constructive denial of counsel and the associated collapse of the adversarial system is imminently

clear." *Moss v. Hofbauer*, 286 F.3d 851, 860 (6th Cir. 2002); *accord Ivory v. Jackson*, 509 F.3d 284, 295 (6th Cir. 2007). It is limited to "situations involving constitutional error of the first magnitude, which cannot be cured even if no prejudice is shown." *Moss*, 286 F.3d at 860. Examples of performance giving rise to *per se* prejudice include counsel "sleeping through critical proceedings, expressing contempt and unmistakable personal antagonism towards the client in the presence of a jury or affirmatively declining to present a defense." *See Ivory*, 509 F.3d at 295 (citations omitted). By contrast, the Sixth Circuit has held that a defense attorney's drug and alcohol abuse did not give rise to a presumption of prejudice under *Cronic*, where counsel cross-examined witnesses, moved for a judgment of acquittal, and made a coherent closing argument. *Id.*

The allegations of ineffective assistance of counsel made in the present case are insufficient to satisfy the *Strickland* standard, let alone the kind of constitutional error "of the first magnitude" in which *Cronic* applies. Petitioner's invocation of *Cronic* is a transparent attempt to overcome the unassailable findings of the Court of Appeals concerning the lack of prejudice arising from any act or omission of defense counsel. Petitioner would obviously like to dispense with the showing of prejudice altogether, but to do so he must show a fundamental collapse of the adversarial system. As petitioner has not done so, his sixth and seventh claims for habeas relief are meritless.

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied on its merits.


Dated:  March 25, 2013                    /s/  Joseph G. Scoville_____
                                          United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIvR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).